## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
### (EASTERN DIVISION)

| | | |
|---|---|---|
| Terry Smith | ) | |
|        Plaintiff | ) | |
| v. | ) | |
| | ) | No. 1:18–cv–01513 |
| Jennifer Rosato Perea, | ) | |
| DePaul University, | ) | Hon. Andrea Wood |
| and Dennis H. Holtschneider | ) | |
|        Defendants. | ) | Hon. Mary Rowland |
| _____ | ) | |

### Terry Smith's Response and Objection To Defendants'
### Motion To Quash Third Party Subpoenas

Terry Smith responds and objects to Defendant Jennifer Rosato Perea, DePaul University, and Dennis H. Holtschneider's (collectively the "defendants") motion to quash as follows:

### Executive Summary

Somehow the defendants interpreted a request for a meet-and-confer concerning outstanding discovery as an attempt to circumvent the court's *in camera* review of certain documents claimed to be confidential. But rather than comply with Rule 37.2 of this Court's local rules—which exists so that the parties can attempt to resolve discovery disputes amongst themselves before seeking court assistance—the defendants decided to file a motion to quash. Had the defendants followed the rule, they would have learned that Professor Smith was specifically interested in (a) a response from the non-parties with respect to obviously non-confidential materials, and (b) information on a production plan following the Court's resolution of the defendants' request for a protective order. Instead, their motion requires a response, which has resulted caused the unnecessary consumption of the Court's time and Professor Smith's resources. The costs of such actions should be taxed to them.

## Facts and Procedural History

This is a document intensive case. There are at least six internal investigations relevant to the allegations in Professor Smith's complaint. In chronological order, these investigations include the following: (i) a 2014 investigation by Arlette Johnson of DePaul's Office of Institutional Diversity and Equity ("OIDE") concerning Professor Smith's exclusion from the Dean Search Committee (*see* Compl. ¶¶31–32), (ii) a 2014 investigation by Rachel Yarch, who took over Ms. Johnson's investigation after Ms. Johnson had completed it but before she had written her report (*see* Compl. ¶32), (iii) a 2015 site inspection by the American Bar Association, which issued a report memorializing faculty anger following Professor Smith's charge of discrimination with the EEOC (Compl. ¶18), (iv) a 2017 investigation by William Powers as to whether Chapter 4 proceedings should be initiated at the law school (Compl. ¶¶44–46), (v) a 2017 investigation by Proskauer Rose on behalf of OIDE concerning charges of discrimination made against Professor Smith (*e.g.*, Compl. ¶47), and (vi) a 2017 investigation by Jennifer Rosato Perea's concerning alleged violations of Chapter 4 of the DePaul University Faculty Handbook (Compl. ¶¶48–70).

Given the volume of documents in this case, Professor Smith sought and received leave to issue subpoenas for documents before the parties completed their MIDP disclosures. The purposes of these subpoenas were threefold. First, given the nature of investigations, there are likely relevant documents that are not within the possession, custody, or control of DePaul University, including original handwritten notes of interviews, draft interview memoranda, and draft reports. Thus, subpoenas for documents would issue to non-party custodians in any event. Second, issuing subpoenas early in the process would allow non-party custodians to begin assembling documents for production so that Professor Smith could start scheduling depositions in a manner that would minimize inconvenience for non-party deponents. Third, non-party subpoenas serve as an insurance policy

against anticipated recalcitrance from the defendants with respect to document production. And indeed, even at this early stage of litigation, Professor Smith knows of two key documents that De-Paul has refused to produce even though there are no claims of confidentiality: (i) the 2015 ABA site inspection report, even though that document was identified in the complaint, and (ii) a video recording of a Faculty Council retreat on institutional racism.

Professor Smith's contact with Proskauer Rose and Kopon Aido, which ostensibly caused the defendants' to file their motion, was intended to discover (a) why these custodians have not made any contact following service of properly issued subpoenas, (b) why these custodians have not produced documents where DePaul does not claim a protectable interest, and (c) the production plan after the Court completes its review, as the parties have only ten short months to complete fact discovery. Contrary to argument in the motion to quash, there is nothing insidious about contacting a custodian to accomplish these goals. Nor is there anything insidious about initiating motion practice if a custodian ignores a properly issued subpoena following a request for a meet-and-confer.

## A.     The subpoena to Proskauer Rose

Professor Smith acknowledges that the defendants have claimed a protectable interest in certain documents that he has requested from Proskauer Rose. (For reasons stated in his objection to the proposed protective order, *see* Docket No. 21, Professor Smith does not believe those documents are confidential.) But what about the obviously non-confidential documents like litigation hold notices, communications from OIDE concerning the scope of Proskauer Rose's investigation, copies of Daniel Morales's and Julie Lawton's initial complaints (which caused OIDE to engage Proskauer Rose), and the engagement letter detailing Proskauer Rose's investigatory mandate(s)? Certainly Proskauer Rose can produce these documents while the Court completes its *in camera* review of the documents tendered by the defendants.

**B.    The subpoena to Kopon Airdo**

Despite their averments in the motion to quash, the defendants have never stated that they are representing Kopon Airdo with respect to its document production. Nor have they claimed materials related to Rachel Yarch's investigation were confidential. How do we know? Because the defendants produced certain emails related to Ms. Yarch's investigation with their MIDP disclosures. Moreover, the issue of Ms. Yarch's investigation was never discussed in any of the parties' multiple meet–and–confers concerning confidentiality.[1] Although the defendants claim to have stated that Ms. Yarch's investigation was confidential in open court, the undersigned does not recall that statement. Rather, the undersigned recalls reference only documents related to the investigations conducted by William Powers and Proskauer Rose.

Notwithstanding that the defendants are now claiming documents related to Ms. Yarch's investigation are confidential, what about the obviously non–confidential documents? Again, certainly Kopon Airdo can produce the litigation hold notices, communications from OIDE concerning the scope of Ms. Yarch's investigation, and the engagement letter detailing the investigatory mandate while this Court completes its review.

**C.    Conflicting statements concerning the volume of documents in which the defendants claim a confidentiality interest**

---

[1]    As discussed in Professor Smith's response and objection to the defendants' motion for a confidentiality order, the first meet–and–confer occurred at approximately 10:50 a.m. on April 19, 2018 with Denise Greathouse, counsel for the defendants, calling the undersigned. Approximately twenty minutes later Ms. Greathouse called the undersigned again and left a voice mail; the undersigned returned Ms. Greathouse's call at approximately 2:20 p.m. that same day, and the parties had another short telephonic meet–and–confer. The third meet–and–confer occurred at approximately 8:05 a.m. on Friday, April 20, 2018, with Ms. Greathouse calling the undersigned and with the meet–and–confer lasting approximately 18 minutes. The parties discussed the potential for a confidentiality order during their Rule 26(f) conference in March, and also discussed the potential for a confidentiality order during a nearly two–hour follow–up call the day the parties submitted their Rule 26(f) report. During these conversations, the confidentiality discussions focused on the Powers and the Proskauer Rose investigations, and not the Kopon Airdo investigation.

On May 1, 2018, defense counsel stated in open court that there were approximately 350 pages of allegedly confidential information in connection with the Powers investigation, and approximately 350 pages of confidential information in connection with the Proskauer Rose investigation. Yet, the defendants' transmittal letter to this court (copy attached as Exhibit A) reveals that the defendants have tendered documents Bates labeled DEF002245–4341 for *in camera* review. Unless there are a significant number of blank pages in this production, the allegedly confidential materials total almost 2,100 pages as opposed to 700 pages. Given that the volume of allegedly confidential documents continues to grow, Professor Smith has an acute need to review documents now as opposed to waiting for a document dump later in these proceedings.

D.    ***Post hoc* conversation with defense counsel concerning the motion to quash**

This morning, Eric Rumbaugh (one of the attorneys for the defendants), called the undersigned to discuss damages. Following that conversation, the undersigned asked Mr. Rumbaugh about the defendants' motion to quash and specifically requested withdrawal of that motion. In making this request, the undersigned highlighted (1) the defendants' failure to meet-and-confer prior to inserting highly charged allegations into the record, and (2) a combination of the non-parties' silence after receiving a subpoena, the short time frame for the completion of fact discovery, and the non-production of non-confidential information drove the request for a meet-and-confer. The undersigned also expressly stated that (a) he was not seeking to compel production of documents in which the defendants claimed a confidentiality interest prior to this Court completing its review, and (b) he was particularly concerned about the timing of any document production given the short window for the completion of fact discovery. Although Mr. Rumbaugh promised to discuss the withdrawal of the motion to quash with the attorney who filed it, he made no promises, and the motion has not been withdrawn as of the filing of this response.

## Standard of Review

Under Rule 45(d)(3)(A) of the federal rules of civil procedure, a court may quash or modify a subpoena if it "requires disclosure of privileged or other protected matter." The party seeking to quash a subpoena has the burden of demonstrating that it meets these requirements. *See Pac. Century Int'l, Ltd. v. Does 1–37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012). The decision to quash a subpoena is within the Court's discretion. *Id.*

## Argument

This Court should deny the motion to quash because it was filed in violation of local rule 37.2, because it is not timely, and because the defendants have not met their burden of showing the need for the court to quash anything. The defendants' most grievous sin in their motion practice is the failure to conduct a Rule 37.2 meet-and-confer prior to seeking this Court's assistance on a discovery matter. Their unfortunate reaction to Professor Smith's *mere request* for a meet-and-confer with Proskauer Rose and with Kopon Airdo has necessitated that Professor Smith prepare this response at considerable expense. The Court should tax those expenses to defense counsel pursuant to 28 U.S.C. §1927.

**A.    The defendants have failed to meet-and-confer in good faith as required under Local Rule 37.2**

Local Rule 37.2 requires the parties to engage in a good faith meet-and-confer prior to seeking this Court's assistance on discovery matters. The purpose of this rule is to "'curtail undue delay and expense in the administration of justice.'" *West Bend Mut. Ins. Co. v. Zurich Am. Ins. Co.*, No. 17-C-2598, 2018 WL 1736153, *4 (April. 11, 2018) (internal quotes in the original). This rule "rests on what Justice Holmes called the shortness of life and the reality that there is a never ending procession of cases that compete for judicial attention. If the parties can resolve their issue, the

court's time is saved and available to be directed to those cases that present issues that cannot be amicably resolved. Each hour needlessly spent on a dispute is an hour squandered." *Id. See also Suture Express, Inc. v. Cardinal Health 200, LLC*, No. 14–cv–4737, 2014 WL 6478077, *11 (Nov. 18, 2014) (Wood, J.) (ordering "strict compliance with Local Rule 37.2 prior to seeking additional relief from the Court"). In blatant defiance of Local Rule 37.2, the defendants filed their motion to quash without even attempting to understand the purpose of Professor Smith's the request for a meet-and-confer directed to the non–parties or attempting to resolve the dispute amicably. The Court should not reward such behavior by considering–let alone granting–the defendants' motion to quash.

Contrast the defendants' conduct in the face of a discovery dispute with Professor Smith's. Rather than immediately run to this Court on a motion to compel, Professor Smith sent letters to Proskauer Rose and Kopon Airdo to inquire about subpoenas that issued a month ago. The hope was to discuss the plan for producing information that the defendants do not believe is confidential and to ensure that all remaining documents would be produced timely following the Court's review of the documents the defendants believe to be confidential. The defendants' response? They have made the Kafkaesque request that this Court castigate Professor Smith for *attempting to comply* with Local Rule 37.2.

## B. The defendants' motion to quash is not timely

A motion to quash is timely when made at or before the time of compliance. *Central States Southeast & Southwest Area Pension Fund v. GWT 2005, Inc.*, No. 06–cv–1205, 2009 WL 3255246, *1 (N.D. Ill. Oct. 6 2009) ("[T]his court has held that a motion to quash must be made at or before the time of compliance"); *Flagstar Bank, FSB v. Freestar Bank, N.A.*, No. 09-CV-1941, 2009 WL 2706965, at *3 (N. D. Ill. Aug. 25, 2009) (similar). In this case, the non–parties were to comply with

Professor Smith's subpoenas on or before May 1, 2018, and the defendants received notice of those subpoenas at least a month before the deadline for compliance. And at no time before this date did anyone lodge any objection with respect to *any* portion of the subpoenas. Nor did the defendants ask Professor Smith to toll the deadline for filing a motion to quash. Thus, the defendants have now waived their right to lodge any objection.

C.     **The defendants have not met their burden to show that information should not be produced**

Even if the defendants had timely filed their motion to quash, their sole objection to the non-party subpoenas an alleged confidentiality interest in *some*, albeit not all, of the documents requested. Neither the defendants nor the non-parties who were subpoenaed have objected to the burden of compliance. In other words, the dispute is not whether Proskauer Rose or Kopon Airdo may produce. Instead, the only issue is what protections (if any) should apply to the documents to be produced, and the defendants' motion to quash is not well taken. At most, the defendants seek to modify the subpoena, not to quash it in its entirety. Again, the defendants could have achieved this result through a polite phone call as opposed to this motion practice. And, again, the defendants do not even attempt to grapple with the propriety of Professor Smith's request for non-confidential material.

D.     **The Court should consider taxing fees and costs to the defendants pursuant to 28 U.S.C. §1927**

A court may order opposing counsel to pay fees where it "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. §1927. *See also Boyer v. BNSF Railway Co.*, 824 F.3d 694, 708 (7th Cir. 2016) (reversing district court's order denying fees under §1927). A court need not find a party's claims to be frivolous–as it would under Rule 11 of the Federal Rules of Civil

Procedure—before invoking section 1927. *Boyer*, 824 F.3d at 708. Rather, the court need only find that counsel acted with either subjective or objective bad faith. *Id.*

As discussed *supra*, this motion practice was entirely unnecessary. This was not a situation where the defendants needed to run to Court to prevent an irreparable harm: no motion to compel was pending, Professor Smith had not even scheduled a meet-and-confer with the non-parties, the tone and tenor of the defendants' motion to quash suggests that the defendants are in control of Proskauer Rose's and Kopon Airdo's compliance efforts, and the defendants noticed their motion for presentment two and a half weeks after filing as opposed to immediately after filing. But instead of taking the measured step of attempting to discuss the issue—which would have consumed far fewer of Professor Smith's resources than responding to a formal motion—the defendants unnecessarily multiplied these proceedings. Section 1927 is designed to ameliorate the harm coming from behavior of the sort that the defendants exhibited here.

WHEREFORE, Professor Smith respectfully requests that the Court (1) deny the motion to quash, (2) order the defendants to pay fees and costs associated with this motion practice, and (3) award him any additional relief to which he is entitled.

Respectfully submitted,  
May 14, 2018

/s/ Fitzgerald T. Bramwell  
Fitzgerald T. Bramwell  
LAW OFFICES OF FITZGERALD BRAMWELL  
255 West Washington, Suite 2200  
Chicago, Illinois 60606  
312-924-2884 (voice)  
bramwell@fitzgeraldbramwell.com

<u>**Certificate of Service**</u>

The undersigned, an attorney, hereby certifies that he filed the foregoing Terry Smith's Response and Objection To Defendants' Motion To Quash Third Party Subpoenas on May 14, 2018 with the Clerk of the Court using the CM/ECF system, which will cause service on the following counsel:

Eric H. Rumbaugh, Esq.                             Denise L. Greathouse, Esq.
Michael Best & Friedrich LLP               Katherine L. Goyert, Esq.
100 E. Wisconsin Ave., Suite 3300         Michael Best & Friedrich LLP
Milwaukee, Wisconsin 53202               444 W. Lake Street, Suite 3200
ehrumbaugh@michaelbest.com             Chicago, Illinois 60606
*Counsel for defendants*                        dlgreathouse@michaelbest.com
                                          klgoyert@michaelbest.com
                                        *Counsel for defendants*

<u>*/s/ Fitzgerald T. Bramwell*</u>
Fitzgerald T. Bramwell
**Law Offices of Fitzgerald Bramwell**
225 West Washington, Suite 2200
Chicago, Illinois 60606
312.924.2884
bramwell@fitzgeraldbramwell.com

# Exhibit A


**Michael Best**

Michael Best & Friedrich LLP
Attorneys at Law
Denise Greathouse
T 262.956.6534
E dlgreathouse@michaelbest.com

May 4, 2018

**Via Hand Delivery**

Judge Andrea R. Wood
c/o Enjoli Fletcher, Courtroom Deputy
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street, Room 1932
Chicago, IL 60604

      Re:   *In Camera Review*
           *Smith v. DePaul University, et al.* **(Case No. 18-cv-01513)**

Dear Judge Wood:

Pursuant to the Court's verbal order on May 1, 2018, Defendants submit the following confidential personnel and employment records on the enclosed USB for in camera review: DEF002245 – DEF004341. For ease of reference, we have sorted the documents into three categories: (1) Powers Investigation; (2) OIDE Investigations; and (3) Other Non-Party Faculty Personnel and Employment Records.

Please note that the parties have not begun production of ESI. The ESI will contain the same or similar confidential personnel and employment records.

Please let me know if you have any questions.

Sincerely,

MICHAEL BEST & FRIEDRICH LLP

*Denise Greathouse /db*

Denise Greathouse

DG:db

Enclosure

Cc: Fitzgerald Bramwell via e-mail (without enclosure)