**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TERRY SMITH,<br><br>    Plaintiff,<br><br> v.<br><br>JENNIFER ROSATO PEREA, DEPAUL UNIVERSITY, and DENNIS H. HOLTSCHNEIDER,<br><br>    Defendants. | Case No. 18-CV-01513<br><br>Judge Andrea R. Wood |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Eric H. Rumbaugh
Michael Best & Friedrich LLP
100 E. Wisconsin Ave., Suite 3300
Milwaukee, WI 53202
Phone: 414.225.2742

Denise Greathouse
Katherine L. Goyert
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, Illinois  60606
Phone: 312.222.0800

Attorneys for Defendants,
DePaul University, Jennifer Rosato Perea
and Dennis H. Holtschneider

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

RELEVANT FACTS ...................................................................................................... 3

   I.    ███████████████████████████████████████ ........................ 3

   II.   In 2017, Two Junior Faculty of Color Filed Complaints Against Plaintiff Alleging Racially Hostile Conduct. ......................................................................... 4

   III.  In 2017, DePaul Hired an Outside Fact-Finder To Review the COL as a Whole. ............. 5

   IV.  The Faculty Handbook Sets Forth an Extensive Process for Internal Investigations of Tenured Faculty Members. ................................................................ 7

   V.   Dean Rosato Perea Conducted a Chapter Four Investigation into Complaints of Bullying and Harassment Brought By Numerous Faculty Members ................................. 9

LEGAL STANDARD .................................................................................................... 12

ARGUMENT ................................................................................................................ 13

   I.    Plaintiff Has Not Demonstrated Any Irreparable Harm. ....................................... 13

   A.   Plaintiff's Delay Alone Dooms His Claim for Injunctive Relief. ..................................... 18

   B.   An Alleged Loss of Process is Not an Irreparable Harm For Which No Adequate Remedy at Law Exists. ................................................................... 19

   C.   A Speculative Loss of Right to Participate in Shared Governance Stemming From a Non-Existent, Speculative Termination is Not an Irreparable Harm. ......................... 19

   D.   A Speculative Loss of Goodwill Stemming From a Non-Existent, Speculative Termination is Not an Irreparable Harm. ................................................................ 20

   E.   Any Alleged Psychic Harm Due to the Chapter Four Investigation is Not Irreparable. ................................................................................... 21

   II.   Plaintiff Has Not Demonstrated a Likelihood of Success on the Merits of His Breach of Contract Claim (Count VII). .............................................................. 23

   A.   The Powers Fact-Finding Was Not a Breach of Contract. ................................................. 23

   B.   The Chapter Four Proceeding is Distinct From the OIDE Investigation. .......................... 24

   C.   Dean Rosato Perea Completed the Chapter Four Investigation Pursuant to the Faculty Handbook Procedure. ............................................................................ 25

   D.   The Faculty Handbook Does Not Require Counseling Prior to Initiating a Chapter Four Investigation. ......................................................................... 26

   E.   Plaintiff Was Afforded Due Process During the Chapter Four Investigation. ................. 27

   F.   Dean Rosato Perea and Provost denBoer Timely Completed the Chapter Four Investigation. ............................................................................. 28

Table of Contents (continued)

Page

G.    DePaul Followed the Faculty Handbook Procedure in Selecting the Hearing Committee Members.............................................................................................. 29

IV.   The Equitable Balance Weighs in Favor of This Court Denying Injunctive Relief. ........ 30

CONCLUSION........................................................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs v. Mead Johnson & Co*,
   971 F.2d 6 (7th Cir. 1992) ...................................................................................13

*Ahmad v. Long Island Univ.*,
   18 F. Supp. 2d 245 (E.D.N.Y. 1998) ...................................................................18

*Bagley v. Yale University*,
   No. 3:13-cv-1890, 2014 U.S. Dist. LEXIS 177611 (D. Conn. Dec. 29, 2014) .......................18

*BankDirect Capital Finance, LLC v. Capital Premium Finance, Inc.*,
   No. 15-C-10340, 2017 U.S. Dist. LEXIS 195519 (N.D. Ill. Nov. 29, 2017) .........................21

*Bedrossian v. Northwestern Mem. Hosp.*,
   409 F.3d 840 (7th Cir. 2005) ................................................................14, 15, 20, 21

*Brown v. District of Columbia*,
   888 F. Supp. 2d 28 (D.D.C. 2012) ..................................................................16, 18

*Clark v. Holmes*,
   474 F.2d 928 (7th Cir. 1973) ...............................................................................30

*D.U. v. Rhoades*,
   825 F.3d 331 (7th Cir. 2016) ........................................................................16, 20

*Ditton v. Rusch*,
   No. 14-C-3260, 2014 U.S. Dist. LEXIS 125677 (N.D. Ill. Sept. 9, 2014) .................16, 20, 29

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A Inc.*,
   549 F.3d 1079 (7th Cir. 2008) .......................................................................12, 21, 30

*Grant v. Trustees of Ind. Univ.*,
   870 F.3d 562 (7th Cir. 2017) ...............................................................................27

*Hales v. Timberline Knolls, LLC*,
   No. 15 C 2622, 2017 U.S. Dist. LEXIS 11 (N.D. Ill., Jan. 3, 2017).....................................23

*Hentosh v. Herman M. Finch University of Health Sciences*,
   314 Ill.App.3d 1009 (2d Dist. 2000)........................................................................19

*Jackson v. Macalester College*,
   169 F. Supp. 3d 918, 922 (D. Minn. 2016)..........................................................17, 21

*Jones v. Greyhound Exposition Servs.*,
   No. 05-C-6168, 2006 U.S. Dist. LEXIS 55782 (N.D. Ill. July 26, 2006)...................15, 19, 22

i

*Karimi v. Golden Gate Sch. of Law*,
  No. 17-cv-05702-JCS, 2018 U.S. Dist. LEXIS 69088 (N.D. Ca. April 23, 2018) ...................................................................................................15, 17, 19, 21

*Keen v. Penson*,
  970 F.2d 252 (7th Cir. 1992) ...............................................................................30

*Lancaster Foundation Inc. v. Skolnick*,
  No. 92-C-4175, 1992 U.S. Dist. LEXIS 12612 (N.D. Ill. Aug. 21, 1992) ............15

*Ludlow v. Northwestern Univ.*,
  79 F. Supp. 3d 824, 835, FN 5 (N.D. Ill. 2015) ...................................................21

*Maples v. Martin*,
  858 F.2d 1546 (11th Cir. 1988) ...........................................................................30

*Nuovo v. Whitacre*,
  No. 2:10-cv-240, 2010 U.S. Dist. LEXIS 61212 (S.D. Ohio June 3, 2010)...................17, 21

*Riano v. McDonald*,
  833 F.3d 830 (7th Cir. 2016) ...............................................................................26

*Roland Machinery Co. v. Dresser Industries, Inc.*,
  749 F.2d 380 (7th Cir. 1984) ...............................................................................14

*Sampson v. Murray*,
  415 U.S. 61 (1974)......................................................................................... passim

*Schrier v. Univ. of Colo.*,
  427 F.3d 1253 (10th Cir. 2005) ...........................................................................18

*Simonsen v. Bd. of Ed. of Chicago*,
  No. 01-C-3081, 2001 U.S. Dist. LEXIS 16993 (N.D. Ill. Oct. 12, 2001) .................15, 19, 30

*Spina v. Forest Preserve District Of Cook County*,
  No 98-C-1393, 2002 U.S. Dist. LEXIS 14016 (N.D. Ill. Jul. 31, 2002)...............................22

*Vignola v. 151 N. Kenilworth Condominium Ass'n*,
  No. 16-cv-00713, 2016 U.S. Dist. LEXIS 151570 (N.D. Ill. Nov 2, 2016) ...................12, 13

*Virginia Petroleum Jobbers Asso. v. Federal Power Com.*,
  259 F.2d 921 (D.D.C. 1958) ................................................................................14

*Vogel v. American Society of Appraisers*,
  No. 83-C-6638, 1983 U.S. Dist. LEXIS 11204 (N.D. Ill. Dec. 1, 1983)...............................16

*Whitby v. Dr. John Warner Hosp.*,
  No. 11-3112, 2011 U.S. Dist. LEXIS 46199 (C.D. Ill. April 29, 2011)...............................16

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008)...............................................................................................................20

Defendants DePaul University ("DePaul"), Dean Jennifer Rosato Perea ("Dean Rosato Perea"), and Dennis H. Holtschneider ("Father Holtschneider") (collectively, "Defendants"), by and through the undersigned attorneys, submit this Response in Opposition to the Motion for Preliminary Injunction filed by Plaintiff Terry Smith ("Plaintiff").

## **INTRODUCTION**

Plaintiff – with no legal basis – is requesting that this Court stop a yet to be scheduled hearing simply because it might result in some yet to be decided employment action at an unidentified point in the future. This Motion is a distraction and waste of this Court's resources, filed for the sole purpose of preventing Plaintiff's tenured faculty peers from carrying out their contractual duty under the Faculty Handbook. Federal courts have routinely rejected attempts by employees to stop internal disciplinary processes. Plaintiff might be vindicated in his internal hearing; or, he could be vindicated at the next level of internal appeal. And, even if he lost, he still could obtain relief – later – in court. This is why courts routinely deny motions seeking to stop a pending disciplinary process – there is no irreparable harm. The Supreme Court and Seventh Circuit have made clear that in the context of employee terminations like the case at hand, reputational and other harm stemming from an employee discharge generally falls "far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction" and adequate remedies at law exist to address any such claims. Indeed, Plaintiff has not cited, and Defendants have not identified, any case in which a court granted a plaintiff's request to stop a disciplinary process at a university or college before even hearing the result. To do so here would invite faculty to race to the courthouse every time a university attempted to address allegations of misconduct in the workplace.

Plaintiff's arguments should not distract the Court from the fact that COL faculty

implored Dean Rosato Perea to do something about Plaintiff's behavior. She received multiple complaints regarding Plaintiff's abusive conduct, and she was not alone. ██████████████

██████████████████████████████████████████

████████████████████████        ██████████████████████

██████████████████████████████████████████

██████████████████████████ Plaintiff was granted, and took advantage of, multiple opportunities to respond to the charges and present evidence. Dean Rosato Perea ultimately concluded that Plaintiff's conduct violated the Faculty Handbook and rights of his colleagues, and recommended termination of employment. Provost denBoer then conducted the second level of review of the charges and evidence provided by both parties. Following his review, the Provost referred Dean Rosato Perea's recommendation for a third level of *de novo* review – a formal faculty hearing, complete with presentation of evidence and witnesses, with the opportunity for cross-examination.

Plaintiff is now attempting to obstruct this third level of review. Plaintiff's delay in doing so further dooms his motion. Plaintiff was presented with the Statement of Charges on November 16, 2017, and on March 1, 2018, Plaintiff was notified that Provost denBoer referred Dean Rosato Perea's recommendation for termination for faculty hearing. Plaintiff's decision to wait over eight months from receipt of the Charges and five months from notification of the hearing before filing his motion undercuts any argument that the relief sought is somehow urgent. Plaintiff's incessant efforts to halt the process before his faculty peers have an opportunity to assess his conduct are a clear reflection of his fear that his tenured colleagues will find his conduct as reprehensible as the Dean found it. He cannot ask this Court to halt the designated internal proceedings – and essentially rob the complaining faculty of their right to

seek redress for his conduct – simply because he fears the outcome.

The Faculty Handbook contains a comprehensive procedure, with built in protections for faculty rights. DePaul is simply trying to continue that process despite Plaintiff's non-stop internal and external efforts to halt it prematurely. Plaintiff has alleged no irreparable harm. He waited too long. His underlying factual/legal arguments are wrong. The balance of harms weighs against an injunction, as the COL and Plaintiff's victims would be harmed by delaying the Chapter Four process. Each or any of these reasons, by itself, requires denial of an injunction. Accordingly, Defendants respectfully request that this Court deny Plaintiff's Motion for Preliminary Injunction.

## **RELEVANT FACTS**

In 2009, DePaul hired Plaintiff as a tenured professor in DePaul's College of Law ("COL"). (Dec. of Dean Rosato Perea ¶ 5).[1]  To date, Plaintiff remains a tenured professor at the COL. (Dec. of Dean Rosato Perea ¶ 6). None of the terms and conditions of Plaintiff's employment have been altered as a result of any of the actions allegedly engaged in by Dean Rosato Perea or DePaul. (Dec. of Dean Rosato Perea ¶ 7). Most notably, DePaul's internal investigation into Plaintiff's bullying and intimidation against two junior COL faculty of color has not led to any discipline as the matter is in mid-process, awaiting a *de novo* review before a faculty hearing panel and a potential internal appeal thereafter. (Dec. of Dean Rosato Perea ¶ 8).

**I.**  ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

---

[1] The Declaration of Dean Jennifer Rosato Perea is attached as Exhibit 1.



## II.  In 2017, Two Junior Faculty of Color Filed Complaints Against Plaintiff Alleging Racially Hostile Conduct.

In 2016, COL Professors Julie Lawton (African-American) and Daniel Morales (Hispanic) applied for tenure.  (Comp. ¶ 39).[3]  During the 2016-2017 tenure process, Plaintiff objected to the candidacy of Professors Lawton and Morales using methods well outside the bounds of the Faculty Handbook.  (Dec. of Dean Rosato Perea ¶ 14).  Despite Plaintiff's relentless objections, the COL tenured faculty ultimately voted to grant Professor Lawton tenure and promotion, and Professor Morales tenure.  (Comp. ¶ 41).

Following the tenure vote, Professors Lawton and Morales filed complaints with the Office of Institutional Diversity and Equity ("OIDE") against Plaintiff, alleging that Plaintiff engaged in racially hostile conduct, and that his opposition to them was motivated by their refusal to subscribe to his views of how junior faculty of color should behave.  (Comp. ¶ 43).



---

[2] ████████████████████████████████████████████████████████████

[3] Plaintiff's Complaint (Dkt. No. 1) is cited herein as (Comp. ¶ __).

[4] ████████████████████████████████████████████████████████████



### III.    In 2017, DePaul Hired an Outside Fact-Finder To Review the COL as a Whole.

In 2017, the COL received an increase in faculty complaints, including an increase in complaints against senior faculty members and Dean Rosato Perea.  (Dec. of Provost denBoer ¶ 5).[5]  In response to these complaints, DePaul retained William Powers, Jr., Esq., the former President of the University of Texas and Dean of its law school, to review the COL as a whole in April 2017.  (Dec. of Provost denBoer ¶ 6).  The review was not limited to Plaintiff's conduct, but rather encompassed all members of the COL faculty, including a review of Dean Rosato Perea's effectiveness.  (Dec. of Provost denBoer ¶ 7).  On May 22, 2017, Professor Powers concluded his review and issued a summary report (the "Powers Report").  (Dec. of Provost

---

[5] The Declaration of Provost denBoer is attached as Exhibit 5.

denBoer ¶ 8).



No discipline was issued as a result of the Powers fact-finding because that was not its purpose. (Dec. of Provost denBoer ¶ 9). While Professor Powers reviewed some of the same events underlying the 2017 OIDE investigation, and Dean Rosato Perea's subsequent Chapter Four investigation discussed below, Professor Powers was not tasked with initiating or completing a Chapter Four investigation, much less a Chapter Four Investigation of Plaintiff's

---

[6] The Powers Report is attached as Exhibit 6. Defendants are seeking leave to file Exhibit 6 under seal.

conduct.  (Dec. of Provost denBoer ¶ 10).  Rather, the Powers fact-finding focused on complaints regarding a variety of COL faculty members, including complaints brought by Plaintiff against Dean Rosato Perea.  (Dec. of Provost denBoer ¶ 10).

### IV.    The Faculty Handbook Sets Forth an Extensive Process for Internal Investigations of Tenured Faculty Members.

Chapter Four of the Faculty Handbook provides a multi-layer review process for internal investigations of tenured faculty members before any discipline is recommended or implemented.  (Handbook § 4).[7]  Chapter Four sets forth a collaborative process developed jointly by both faculty and administrators.  (Handbook § 4).  It reflects a deliberate balancing of the needs of faculty to defend themselves against allegations of wrongdoing with DePaul's need to discipline faculty members who engage in misconduct or other unacceptable behavior and protect those faculty members harmed by such conduct.  (Handbook § 4).  The Chapter Four process provides faculty members numerous procedural protections and opportunities to rebut and respond to allegations before any discipline is recommended and again before any discipline is implemented.  (Handbook § 4).

The Chapter Four process begins when a dean initiates an investigation.  (Handbook § 4.4.3(1)).  After conducting an investigation, the dean presents the faculty member in question with a statement of charges, outlining the specific allegations with supporting evidence.  (Handbook § 4.4.3(3)).  The faculty member has the opportunity to respond to the charges through a rebuttal and evidence.  (Handbook § 4.4.3(3)).  The dean then reviews the charges, rebuttal, and supporting evidence, and prepares a report.  (Handbook § 4.4.3(4)).  The faculty member is given a second opportunity to respond to the allegations through a final statement.  (Handbook § 4.4.3(5)).  After reviewing the final statement, the dean issues a decision on the

---

[7] Chapter Four of the Faculty Handbook is attached as Exhibit 7.

charges, which could dismiss the case, impose a minor sanction (sanctions short of suspension or dismissal), or refer the case to the Provost for major sanction (suspension or dismissal). (Handbook § 4.4.3(7)). If the dean recommends major sanctions, the Provost conducts an independent review of the charges, responses, and both parties' supporting evidence. (Handbook § 4.4.3). Based on this review, the Provost issues his or her own decision, dismissing the case, issuing a minor sanction, or referring the case for a formal faculty hearing on major sanctions. (Handbook § 4.4.3).

A formal faculty hearing is the third stage of review for a recommendation of major sanctions. (Handbook § 4.4.4.1). As demonstrated in Section 4.4.4 of the Faculty Handbook, the hearing process is extensive, consisting of 21 steps, rules and procedures. Prior to a hearing, the university representative submits a statement of charges and the faculty member is given a third opportunity to respond to the allegations through a written response. (Handbook § 44.4.1(2), (3)). The parties conduct what is in effect *voir dire* before agreeing to three tenured faculty members to serve as the panel. (Handbook § 4.4.4.1(5)). The faculty hearing functions much like an actual hearing, where the parties present evidence and witnesses, with the opportunity for cross-examination, and opening and closing statements. (Handbook § 4.4.4.2). Only after this *de novo* review, does the faculty hearing panel issue a finding on the charges, which could include rejection of the dean's recommendation and dismissal of the charges or a finding of adequate cause for discipline. (Handbook § 4.4.4.2 (14)). If the faculty hearing panel recommends major sanctions, the faculty member is given the opportunity for a fourth independent review of the matter before an Appeals Board as set forth in the Handbook's extensive appeals process. (Handbook § 4.4.5).

**V.    Dean Rosato Perea Conducted a Chapter Four Investigation into Complaints of Bullying and Harassment Brought By Numerous Faculty Members.**

During the 2017 tenure review process, Dean Rosato Perea received numerous complaints regarding Plaintiff's conduct. (Dec. of Dean Rosato Perea ¶ 16). As noted above, some of these complaints resulted in an OIDE investigation. (Dec. of Dean Rosato Perea ¶ 17). Dean Rosato Perea awaited the outcome of that investigation for further action, as anticipated by the Faculty Handbook. (Dec. of Dean Rosato Perea ¶ 17). Upon conclusion of the OIDE investigation, the matter was referred to Dean Rosato Perea for further evaluation as to whether Plaintiff's bullying and harassing conduct rose to the level of misconduct as defined by the Faculty Handbook. (Dec. of Dean Rosato Perea ¶ 18).

On August 31, 2017, Dean Rosato Perea announced she was initiating an investigation into allegations of misconduct committed by Plaintiff based on the multitude of complaints she had received from junior and senior faculty alike regarding Plaintiff's bullying and harassing. (Dec. of Dean Rosato Perea ¶ 19). During her investigation, Dean Rosato Perea interviewed 20 witnesses and reviewed over 700 pages of supporting documents provided by various faculty members to assist in the investigation. (Dec. of Dean Rosato Perea ¶ 20). Many of the faculty members spoke to Dean Rosato Perea on the condition of anonymity due to stated fear of retaliation by Plaintiff. (Dec. of Dean Rosato Perea ¶ 21). Dean Rosato Perea's investigation did not rely upon or incorporate prior investigations or fact-finding conducted by the OIDE or Professor Powers, but she did review some of the same underlying events. (Dec. of Dean Rosato Perea ¶ 22).

Before issuing the Statement of Charges (the "Charges"), Dean Rosato Perea attempted, in accordance with the requirements of the Faculty Handbook, to resolve the issues of concern with Plaintiff through an informal process by inviting Plaintiff to meet on a future date with his

9

counsel and DePaul counsel. (Dec. of Dean Rosato Perea ¶ 23). Plaintiff's counsel initially provided an available meeting date of November 17, 2017. (Dec. of Dean Rosato Perea ¶ 24). Plaintiff's counsel shortly thereafter retracted the November 17 date and attempted to delay the meeting until January. (Dec. of Dean Rosato Perea ¶ 25). Dean Rosato Perea provided numerous options throughout the month of November 2017 for potential meeting dates so that the parties could accomplish the meeting by December 1. (Dec. of Dean Rosato Perea ¶ 26). Plaintiff declined to accept any of the alternative dates. (Dec. of Dean Rosato Perea ¶ 27). Plaintiff's refusal to meet for the informal process meeting appeared to Dean Rosato Perea as a transparent attempt to stall the Chapter Four process. (Dec. of Dean Rosato Perea ¶ 28).

On November 16, 2017, Dean Rosato Perea issued the Charges, outlining the allegations against Plaintiff in over 700 pages of documents. (Dec. of Dean Rosato Perea ¶ 29). ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

Pursuant to Chapter Four of the Handbook, Plaintiff received a copy of the Charges and supporting documents, and he had the opportunity to respond through a Rebuttal. (Handbook § 4.4.4(3)). Due to the end-of-year holidays and in response to Plaintiff's complaints about the timing of the process, Dean Rosato Perea extended Plaintiff's two-week Rebuttal deadline to six weeks. (Comp. ¶¶ 62, 69; Handbook § 4.4.3(3) Dec. of Dean Rosato Perea ¶ 34). Plaintiff submitted his Rebuttal on January 2, 2018. (Dec. of Dean Rosato Perea ¶ 36). After receiving Plaintiff's Rebuttal, Dean Rosato Perea prepared a Report, which was due on January 16, 2018 to account for Plaintiff's extension. (Comp. ¶¶ 61, 62; Handbook § 4.4.3(3)). The parties also met on January 16, 2018 to discuss and attempt to resolve the issues at hand; however, the parties were unable to resolve the matter. (Dec. of Dean Rosato Perea ¶ 39).

On January 30, 2018, Plaintiff issued his Final Statement. (Dec. of Dean Rosato Perea ¶ 40). Dean Rosato Perea reviewed the Final Statement and exhibits and issued her decision. (Comp. ¶¶ 62, 64; Handbook § 4.4.3; Dec. of Dean Rosato Perea ¶ 41). ███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████        █████████████████████

██████████████████████████████████████████████

████████████████████████████        On February 9, 2018, Dean Rosato

Perea submitted her recommendation to Provost denBoer for termination of Plaintiff's employment, thus concluding her investigation. (Dec. of Dean Rosato Perea ¶ 45).[8]

On March 1, 2018, Provost Marten denBoer informed Plaintiff that he had referred Dean Rosato Perea's recommendation for a formal faculty hearing to determine whether misconduct occurred. (Comp. ¶ 68; Handbook § 4.4.4.1; Dec. of Provost denBoer ¶ 14). Pursuant to Chapter Four of the Handbook, the Faculty Council's Committee on Committees selected nine tenured faculty members to potentially serve on the hearing panel. (Dec. of Provost denBoer ¶ 15). On April 30, 2018, the parties conducted what was in effect *voir dire* of the nine candidates, and on May 1, 2018, the parties finalized the panel. (Dec. of Provost denBoer ¶ 16). To date, the faculty hearing has not been scheduled. (Dec. of Provost denBoer ¶ 17). The parties have not yet met with the faculty hearing panel to schedule or set the process for the internal hearing. (Dec. of Provost denBoer ¶ 18).

## LEGAL STANDARD

As this Court held in *Vignola v. 151 N. Kenilworth Condominium Ass'n*, No. 16-cv-00713, 2016 U.S. Dist. LEXIS 151570, *4 (N.D. Ill. Nov 2, 2016), "[a] preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant carries the burden of persuasion by a clear showing." (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); *see Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) ("[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.") (internal quotations omitted). To succeed in a motion for preliminary injunction, the moving party must demonstrate: (1) some likelihood of success on the merits of the underlying claim; and (2) that it has no adequate

---

[8] Plaintiff's "untimeliness" argument regarding Dean Rosato Perea's decision is nonsensical. Under Plaintiff's theory, the Dean's decision would have been due on January 25, 2018 – five days before she received Plaintiff's Final Statement.

remedy at law and will suffer irreparable harm if preliminary relief is denied. *Vignola*, 2016 U.S. Dist. LEXIS 151570, *4 (reasoning that the irreparable harm and lack of adequate remedy requirements tend to merge). If the moving party cannot establish either of these prerequisites, "the injunction must be denied." *Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the moving party clears both thresholds, the court must weigh the irreparable harm the moving party would endure without relief against any harm the non-moving party would suffer. *Id.*

## ARGUMENT

This Court should deny Plaintiff's motion for preliminary injunction because: (I) Plaintiff has not demonstrated any irreparable harm; (II) Plaintiff has not demonstrated a likelihood of success on the merits; and (III) even if Plaintiff could meet these threshold requirements, the equitable balance weighs in favor of denial.

### I.   Plaintiff Has Not Demonstrated Any Irreparable Harm.

Plaintiff has alleged the following harms in his motion for injunctive relief: (1) loss of due process resulting in an alleged, but unidentified, harm; (2) a hypothetical loss of right to participate in shared governance if the faculty hearing panel ultimately decides to accept Dean Rosato Perea's termination recommendation after hearing evidence on the issue at some unidentified point in the future; (3) a hypothetical loss of goodwill within the academic community if the faculty hearing panel decides to accept Dean Rosato Perea's termination recommendation; and (4) psychic harm due to ongoing retaliation stemming from the Chapter Four process. (Dkt. No. 38, p. 23). As a matter of law, none of these alleged harms qualify as an "irreparable" harm.

A plaintiff can only obtain injunctive relief for harms that "cannot be prevented or fully rectified by final judgment after trial." *Roland Machinery Co. v. Dresser Industries, Inc.*, 749

F.2d 380, 386 (7th Cir. 1984) (the purpose of the irreparable harm requirement is to "take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that he has no adequate remedy at law, he can easily wait till the end of trial to get that relief."); *Sampson v. Murray*, 415 U.S. 61, 91-92 (1974); *Bedrossian v. Northwestern Mem. Hosp.*, 409 F.3d 840, 845-46 (7th Cir. 2005). In *Roland*, the Seventh Circuit explained that "[i]n saying that the plaintiff must show that an award of damages at the end of trial will be inadequate, we do not mean wholly ineffectual; we mean seriously deficient as a remedy for the harm suffered." 749 F.2d at 386.

Plaintiffs are precluded from injunctive relief if adequate remedies at law exist. In *Sampson*, a federal employee sought to enjoin her dismissal pending resolution of her administrative appeal. 415 U.S. at 63. The employee argued that absent an injunction, she would be irreparably harmed because "spurious and unrebutted charges against her might remain on the record" and "she would suffer the embarrassment of being wrongfully discharged in the presence of her coworkers." *Id*. at 89. The Supreme Court denied injunctive relief, reasoning that lost earnings and reputational harm fall "far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction." *Id.* at 91-92. The Supreme Court added that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* at 91.[9] In *Bedrossian*, the Seventh Circuit denied injunctive relief to a terminated physician alleging reputational harm, stating:

> The Supreme Court set a high standard for obtaining preliminary injunctions restraining termination of employment. Although it did not "foreclose[] relief in

---

[9] This language appeared in a D.C. Circuit case (*Virginia Petroleum Jobbers Ass'n v. Federal Power Com.*, 259 F.2d 921, 925 (D.D.C. 1958)), which the Supreme Court explicitly approved in *Sampson*.

the genuinely extraordinary situation," the type of irreparable injury required must really depart from the harms common to most discharged employees. The plaintiff in *Sampson* alleged humiliation, damages to reputation, and loss of income due to her purportedly wrongful termination from federal employment. The Court held that these injuries did not rise to the level of an extraordinary termination of employment situation, and that they were not 'irreparable' to warrant a preliminary injunction.

409 F.3d at 845-46 (internal citations to *Sampson* omitted).

Federal courts routinely follow *Sampson* and deny injunctive relief to employees seeking to delay disciplinary proceedings. *See e.g.*, *Jones v. Greyhound Exposition Servs.*, No. 05-C-6168, 2006 U.S. Dist. LEXIS 55782, *4 (N.D. Ill. July 26, 2006) (denying injunctive relief where the plaintiff alleged discriminatory and retaliatory treatment, reasoning that if the plaintiff succeeds at trial, "he will be able to collect damages for any harm that he has sustained…*Sampson* and its progeny teach that such future recovery negates the irreparability of harm that is a prerequisite to any granting of injunctive relief."); *Simonsen v. Bd. of Ed. of Chicago*, No. 01-C-3081, 2001 U.S. Dist. LEXIS 16993, *12-13 (N.D. Ill. Oct. 12, 2001) (denying injunctive relief where the plaintiff was suspended from a tenured teaching position without pay during a pending administrative proceeding, reasoning that like in *Sampson*, the plaintiff could receive complete relief in the final judgment); *Karimi v. Golden Gate Sch. of Law*, No. 17-cv-05702-JCS, 2018 U.S. Dist. LEXIS 69088, *40-41 (N.D. Ca. April 23, 2018) (denying injunctive relief where the plaintiff alleged that the defendant's handling of the matter demonstrated the "certainty of the school finding him guilty" in the pending disciplinary proceeding, reasoning that the plaintiff could obtain recourse in court after a final disciplinary decision if some aspect of the hearing violated the applicable handbook); *see also Lancaster Foundation Inc. v. Skolnick*, No. 92-C-4175, 1992 U.S. Dist. LEXIS 12612, *13 (N.D. Ill. Aug. 21, 1992) (denying injunctive relief where the plaintiffs alleged that the defendants' statements

caused them to lose research funding, potential memberships in medical associations, and suffer damage to their goodwill, reasoning the alleged harms "are all amenable to pecuniary valuation and can be adequately compensated with money damages."); *Vogel v. American Society of Appraisers*, No. 83-C-6638, 1983 U.S. Dist. LEXIS 11204, *3-4 (N.D. Ill. Dec. 1, 1983) (denying injunctive relief where the plaintiff was expelled from the American Society of Appraisers, reasoning that his loss, if any, could be measured in damages and that alleged damage to professional reputation was not a basis for preliminary injunctive relief).

Plaintiff enjoys tenure and cannot be fired without a pre-termination hearing to determine whether cause for termination exists. (Handbook § 4.4.4). Plaintiff has not yet been fired; and he might never be. He simply cannot obtain injunctive relief based on speculative harm. *See D.U. v. Rhoades*, 825 F.3d 331, 339 (7th Cir. 2016) ("[I]issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008)); *Ditton v. Rusch*, No. 14-C-3260, 2014 U.S. Dist. LEXIS 125677, *14 (N.D. Ill. Sept. 9, 2014) ("[A] plaintiff claiming reputational harm still must demonstrate that such harm is more than merely speculative."); *see also Whitby v. Dr. John Warner Hosp.*, No. 11-3112, 2011 U.S. Dist. LEXIS 46199, *7 (C.D. Ill. April 29, 2011) (denying injunctive relief where the plaintiff's allegation that she could be subject to a disciplinary charge was merely speculative); *Brown v. District of Columbia*, 888 F. Supp. 2d 28, 33 (D.D.C. 2012) (denying injunctive relief for lack of irreparable harm where plaintiff offered only "speculative, unsubstantiated contentions such as that defendants' denial of tenure 'has and will continue to tarnish [her] professional reputation,' and 'most other law schools would view denial of tenure as a negative statement regarding [her]

16

qualifications.'"").

The existence of a not-completed internal process bars injunctive relief in university cases similar to the case at hand.  *See e.g.*, *Nuovo v. Whitacre*, No. 2:10-cv-240, 2010 U.S. Dist. LEXIS 61212, *19-20 (S.D. Ohio June 3, 2010) (denying injunctive relief where the "evidence unquestionably presents only an as-yet *incomplete* process that *could* lead *to possible* disciplinary action against [the plaintiff] *at some indeterminate point in the future*.  The evidence teaches that such disciplinary action would be subject to a surprisingly extended process during which [the plaintiff], who would remain a tenured faculty member throughout the process, could seek review and potential absolution from any adverse action taken against him.") (emphasis in original); *Jackson v. Macalester College*, 169 F. Supp. 3d 918, 922 (D. Minn. 2016) ("Because speculative harm cannot justify the issuance of a preliminary injunction, the Court will not speculate as to whether [the College] will determine that [the plaintiff] is responsible for any violations of the Policy, or what sanction or remedy (if any) might be imposed.  The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a *possibility* of a remote future injury, or a future invasion of rights.") (emphasis in original) (internal citations omitted); *Karimi*, 2018 U.S. Dist. LEXIS 69088, *40-41 ("If, as [the plaintiff] contends, the charges against him are not warranted under the Handbook, a disciplinary hearing is one of the procedures that the Handbook provides to make that determination.").

In the context of academia, federal courts have applied *Sampson* to deny injunctive relief to professors claiming reputational damage caused by an actual – not hypothetical – tenure decision or termination.  *See e.g.*, *Bagley v. Yale University*, No. 3:13-cv-1890, 2014 U.S. Dist. LEXIS 177611, *24, 35 (D. Conn. Dec. 29, 2014) (non-renewal of a tenured professor's contract

was not irreparable despite allegations that the decision degraded and humiliated the professor in the eyes of her peers, family, and community, and damaged her reputation); *Ahmad v. Long Island Univ.*, 18 F. Supp. 2d 245, 249 (E.D.N.Y. 1998) (denying injunctive relief to a tenured professor who alleged that a non-renewal of contract caused a loss of reputation and interruption in research, reasoning the professor was not precluded from seeking other employment, and continuing his research and teaching elsewhere once his termination came to pass); *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1268 (10th Cir. 2005) (denying injunctive relief where the tenured professor presented no evidence of actual or significant risk of loss of prestige, academic reputation or professional opportunities that could not be remedied by money damages).

### A. Plaintiff's Delay Alone Dooms His Claim for Injunctive Relief.

Plaintiff's extensive delay in bringing this motion is fatal to his claim for injunctive relief. *See e.g.*, *Bagley*, 2014 U.S. Dist. LEXIS 177611, *5 ("[A] plaintiff's delay in seeking a preliminary injunction may weigh against or even preclude a finding that the plaintiff has suffered or will suffer irreparable harm."); *Brown*, 888 F. Supp. 2d at 32-33 (reasoning that the six-month time gap between notification of the plaintiff's tenure denial and the plaintiff's motion for preliminary injunction undercuts any argument of a clear and present need for equitable relief). Plaintiff waited over eight months after presentment of the Charges, five months after notification of the referral to a hearing committee, and three months after he participated in the selection of hearing committee members to seek injunctive relief. Plaintiff's delay by itself destroys his claim to injunctive relief.

**B.     An Alleged Loss of Process is Not an Irreparable Harm For Which No Adequate Remedy at Law Exists.**

Plaintiff's inability to demonstrate any harm stemming from an alleged loss of process dooms his claim.  Plaintiff has alleged "multiple breaches of the Handbook processes," yet he has failed to identify any irreparable harm stemming from these alleged breaches.  While DePaul is trying to complete the Chapter Four process, Plaintiff continually has attempted to thwart this process through baseless allegations and repeated demands that the process arbitrarily be stopped entirely.  He can and should make his allegations of procedural violations to the faculty hearing committee.  If they find his arguments persuasive, they can determine the appropriate remedy, including potential dismissal of the charges against him.

Plaintiff's reliance on *Hentosh v. Herman M. Finch University of Health Sciences*, 314 Ill.App.3d 1009 (2d Dist. 2000) is misplaced as, unlike the case at hand, the Court in *Hentosh* examined whether a judgment and awarded damages were improper, a preliminary injunction was not even at issue. Moreover, even if Plaintiff did suffer a harm due to the Chapter Four investigation, which he did not, he certainly did not suffer any harm that cannot be remedied by damages following resolution of this case on the merits.   *See Simonsen*, 2001 U.S. Dist. LEXIS 16993, *10 FN 3; *Jones*, 2006 U.S. Dist. LEXIS 55782, *4; *Karimi*, 2018 U.S. Dist. LEXIS 69088, *40-41.

**C.     A Speculative Loss of Right to Participate in Shared Governance Stemming From a Non-Existent, Speculative Termination is Not an Irreparable Harm.**

Plaintiff has alleged that "*were* Professor Smith's tenure to be stripped and his employment terminated, he *would* lose the right to participate in University governance." (Dkt. No. 38, pp. 25-26) (emphasis added).  It is undisputed, however, that Plaintiff has not been stripped of tenure, nor has he lost the right to participate in shared governance, as no decision has been made on the termination recommendation.  As this Court noted during the August 14, 2018

hearing, the faculty panel may hear Plaintiff's case and vindicate him from any wrongdoing. (Ex. 8, p. 12).[10]  While Plaintiff presumably is incurring attorneys' fees and costs, "that's not irreparable.  If he's out money, that's classic reparable harm."  (Ex. 8, p. 13).  Indeed, if Plaintiff prevails before the faculty hearing committee, the Faculty Handbook empowers them to award him reasonable attorneys' fees.  (Handbook § 4.4.4.2(10)).

Plaintiff's alleged harm is speculative and, as a matter of law, falls far short of demonstrating irreparable harm requiring court intervention.  *See D.U.*, 825 F.3d at 339; *Winter*, 555 U.S. at 22; *Ditton*, 2014 U.S. Dist. LEXIS 125677, *14.  Moreover, even if the faculty hearing panel had held a hearing, heard the evidence, and decided to accept Dean Rosato Perea's recommendation, which it has not, Plaintiff's request for injunctive relief still must be denied as a loss of shared governance following termination is not extraordinary; rather, it is a harm common to most discharged employees: a loss of employment means a loss of participation in the workplace.  *See Sampson*, 415 U.S. at 91-92; *Bedrossian*, 409 F.3d at 845-46.  Moreover, even then, Plaintiff still would have one more level of internal appeal.  Plaintiff simply has not demonstrated any irreparable harm justifying the entry of this extraordinary and drastic remedy. Any future harm stemming from a future decision by the faculty hearing panel and exhaustion of the appeal process can be addressed through the normal course of litigation.

### D.    A Speculative Loss of Goodwill Stemming From a Non-Existent, Speculative Termination is Not an Irreparable Harm.

Plaintiff alleges that "a finding that Professor Smith has treated junior faculty of color unfairly, and … the loss of his tenure and employment based on such a finding, *would* brand Professor Smith a hypocrite within the academic community."  (Dkt. No. 38, p. 25) (emphasis added).  Once again, this alleged harm is merely speculative as no such finding or decision has

---

[10] The Court Transcript from the August 14, 2018 Hearing is attached as Exhibit 8.

been made. *BankDirect Capital Finance, LLC v. Capital Premium Finance, Inc.*, No. 15-C-10340, 2017 U.S. Dist. LEXIS 195519 (N.D. Ill. Nov. 29, 2017) and *Girl Scouts*, 549 F.3d at 1089 are readily distinguishable as these cases address harm to the goodwill of a business caused by an actual action or inaction by the defendants, not hypothetical reputational harm to an employee based on discipline that may or may not occur at some undefined time in the future. Plaintiff's allegations are much more akin to those presented in *Nuovo* and *Karimi*, in which the courts denied injunctive relief where a disciplinary hearing or proceeding still was pending. *See Nuovo*, 2010 U.S. Dist. LEXIS 61212, *19-20; *Karimi*, 2018 U.S. Dist. LEXIS 69088, *40-41; *see also Jackson*, 169 F. Supp. 3d at 922. Further, even if a decision on Dean Rosato Perea's termination recommendation had been made, which it has not, Plaintiff's claim nevertheless fails as the Supreme Court and Seventh Circuit have made clear that in the context of employee terminations like the case at hand, reputational harm falls "far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction" and adequate remedies at law exist to address any such claims. *Sampson*, 415 U.S. at 91-92; *Bedrossian*, 409 F. 3d at 845-46.

### E. Any Alleged Psychic Harm Due to the Chapter Four Investigation is Not Irreparable.

As a preliminary matter, the Chapter Four investigation does not constitute retaliation as investigations into discrimination, harassment, and misconduct are not materially adverse actions for purposes of a retaliation claim. *See Ludlow v. Northwestern Univ.*, 79 F. Supp. 3d 824, 835, FN 5 (N.D. Ill. 2015) (citing *Keeton v. Morning Star, Inc.*, 667 F.3d 877, 885-86 (7th Cir. 2012)). However, even if the investigation constituted retaliation causing some sort of vague and unidentified "psychic harm," which it does not, Plaintiff has yet to identify any irreparable harm for which no adequate remedy at law exists. *See Sampson*, 415 U.S. at 91-92; *Bedrossian*, 409

21

F.3d at 845-46; *Jones*, 2006 U.S. Dist. LEXIS 55782, *4.

Further, under Plaintiff's theory, any professor subject to an internal investigation could stop such investigation in its tracks by claiming retaliation and filing a motion for preliminary injunction. The purpose of injunctive relief is to cure irreparable harms that cannot be addressed through litigation on the merits, not to serve as a mechanism for plaintiffs seeking to delay internal disciplinary proceedings. Whether or not the Chapter Four investigation is retaliatory is an issue for the Court to decide on the merits as Plaintiff has not identified, and cannot identify, any harm stemming from the investigation that cannot be cured through the course of litigation. *See Jones*, 2006 U.S. Dist. LEXIS 55782, *4 ("If [the plaintiff's] substantive [retaliation and discrimination] claims prove to be true, he will be able to collect damages for any harm that he has sustained.").

Moreover, even if the hearing panel were to conclude that Plaintiff had engaged in misconduct at some undefined date in the future, the Faculty Handbook affords Plaintiff the opportunity to appeal the decision yet one more time. (Handbook § 4.4.5). Plaintiff's reliance on *Spina v. Forest Preserve District Of Cook County*, No 98-C-1393, 2002 U.S. Dist. LEXIS 14016, *10-12 (N.D. Ill. Jul. 31, 2002) is misplaced as the issue before the court in *Spina* was a post-trial injunction to prevent continuing harassment, not a preliminary injunction before any resolution on the merits. Accordingly, this Court should deny Plaintiff's request for injunctive relief as he has failed to demonstrate the threshold requirement of irreparable harm for which no adequate remedy at law exists as he must to obtain a preliminary injunction.

22

## II. Plaintiff Has Not Demonstrated a Likelihood of Success on the Merits of His Breach of Contract Claim (Count VII).[11]

Even if Plaintiff could demonstrate an irreparable harm, which he cannot, Plaintiff's motion for injunctive relief nevertheless fails as Plaintiff has not demonstrated a likelihood of success on the merits. While Plaintiff has alleged seven breaches of the Faculty Handbook,[12] as demonstrated below and in Defendants' Motion to Dismiss Plaintiff's Complaint (Dkt. No. 13), these claims cannot survive dismissal under Rule 12(b)(6), much less succeed on the merits.

### A. The Powers Fact-Finding Was Not a Breach of Contract.

Plaintiff has not identified any provision in the Handbook – nor does any such provision exist – that DePaul breached by initiating the Powers fact-finding. (Comp. ¶ 104(a); Comp, Ex. 1; Dkt. No. 38, pp. 9-10). Plaintiff's allegation that the Powers fact-finding was an "exceptional departure from standard practice" falls far short of identifying any breach of contract. (Comp. ¶ 44). While Section 4.4.3(1) states that the dean shall initiate an investigation of alleged faculty misconduct, nothing in the Handbook prohibits the Provost from hiring an outside fact-finder to review larger concerns. *See Hales v. Timberline Knolls, LLC*, No. 15 C 2622, 2017 U.S. Dist. LEXIS 11, *23-24 (N.D. Ill., Jan. 3, 2017) (dismissing a breach of contract claim pursuant to 12(b)(6) due to failure to identify any particular provision or contractual language that was violated). DePaul engaged Professor Powers to conduct a fact-finding of discord at the COL. Plaintiff has not identified any provision DePaul breached by engaging Professor Powers to complete such task. Plaintiff has failed to identify a breach of contract claim based on the

---

[11] For purposes of responding to Plaintiff's Motion for Preliminary Injunction, Defendants assume the Faculty Handbook is a contract. However, Defendants do not concede this point and reserve their argument concerning whether the Faculty Handbook is a contract for purposes of this case.

[12] To the extent Plaintiff is attempting to hinge his breach of contract claim on the January 6, 2018 Faculty Council Resolution to Affirm Due Process, which was passed after commencement of the Chapter Four investigation, such attempt is futile as Plaintiff also has not demonstrated any likelihood of success on the merits of such claim.

Powers fact-finding, much less demonstrate any likelihood of success on the merits should the claim survive dismissal.

**B.      The Chapter Four Proceeding is Distinct From the OIDE Investigation.**

Plaintiff's attempt to invoke the OIDE dismissal of the racial harassment complaints filed by Professors Lawton and Morales as a method of skirting a Chapter Four investigation is futile. The 2017 OIDE investigation solely concerned whether Plaintiff's actions violated DePaul's Anti-Discrimination and Anti-Harassment Policy. The OIDE did not clear Plaintiff of wrongdoing. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

The language in the OIDE's closing letter to Plaintiff confirms two points as to the OIDE investigation, both of which refute Plaintiff's re-investigation argument.   (Ex. 4).   ████████

████████████████████████████████████████████████████████████

███████████████████   █████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████   ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████The Faculty Handbook instead puts the investigation of such policies in the hands of the dean.  (Handbook § 4.4.3(1)).  The OIDE's investigation posed no restriction on Dean

Rosato Perea's authority to investigate whether the events underlying the OIDE complaint violated the Faculty Handbook – a task that falls squarely within Dean Rosato Perea's purview under Section 4.4.3. Nor did the Dean simply take the OIDE's factual findings on faith. Before undertaking any discipline, she sought to hear from the witnesses and understand the facts for herself. (*See* Handbook § 4.4.3(1)). Plaintiff simply has not identified any provision of the Handbook breached by DePaul in initiating the Chapter Four investigation, much less demonstrated any likelihood of success on the merits of this allegation.

### C. Dean Rosato Perea Completed the Chapter Four Investigation Pursuant to the Faculty Handbook Procedure.

Section 4.4.3 of the Faculty Handbook does not require Dean Rosato Perea to interview Plaintiff prior to issuing the Statement of Charges. Dean Rosato Perea gave Plaintiff the opportunity to analyze each allegation, and the documentation provided in support of the same, over the span of six weeks – over three times the response time specified in the Faculty Handbook. Plaintiff's Rebuttal was 55 single-spaced pages, with 66 accompanying exhibits spanning over 350 pages, which gave Plaintiff the opportunity to proffer everything he deemed relevant in response, with the benefit of deliberative time that any in-person interview would not have afforded. (Dec. of Dean Rosato Perea ¶ 37). *Notably, Plaintiff's Rebuttal did not deny that he had engaged in the reported conduct*. Contrary to Plaintiff's allegation, the Chapter Four investigation did not conclude until Dean Rosato Perea reviewed Plaintiff's Rebuttal and Final Statement, and issued a decision and recommendation to the Provost.

Plaintiff's allegation regarding the informal process meeting is similarly flawed as it is undisputed that on January 16, 2018, Dean Rosato Perea and Plaintiff met with respective counsel for an informal process meeting pursuant to Chapter Four of the Faculty Handbook. Plaintiff has not identified any provision of the Faculty Handbook breached by Dean Rosato

Perea's decision to not appoint a designee. Section 4.4.3(1) of the Faculty Handbook tasks the dean with the responsibility to investigate potential faculty misconduct in his or her department. Under Section 4.4.4 of the Handbook, any decision issued by a dean to impose discipline carries with it the opportunity for multiple levels of review and, as we have in this case, a *de novo* hearing before a faculty panel, during which the dean's personal knowledge will carry whatever weight the panel deems appropriate. While Section 4.4.3 of the Faculty Handbook affords the faculty member the right to request appointment of a designee in the event of a perceived conflict of interest (a request that Plaintiff had made), the dean has no obligation to do so. The only obligation imposed by the Handbook on the dean is to provide written reasons for denying a request for a designee, which Dean Rosato Perea did. Accordingly, Plaintiff has failed to demonstrate a likelihood of success on this allegation.

### D. The Faculty Handbook Does Not Require Counseling Prior to Initiating a Chapter Four Investigation.

Neither Section 6.4.4, nor any other provision of the Handbook, require Dean Rosato Perea to counsel Plaintiff before initiating an investigation. (Comp. ¶ 104(b); Dkt. No. 38, p. 13). Indeed, the first step of the Chapter Four process requires the dean to "initiate[] an investigation of alleged faculty misconduct." (Handbook § 4.4.3). While Section 6.4.4 of the Handbook requires Dean Rosato Perea to "establish adequate means of communication," Plaintiff has not identified any provision that requires counseling prior to an investigation. Moreover, as set forth in Plaintiff's Complaint, Dean Rosato Perea issued Plaintiff a Statement of Charges setting forth her concerns and the allegations against Plaintiff, prior to coming to any conclusion on her recommendation. (Comp. ¶ 49; Handbook § 4.4.4.1). Plaintiff has failed to plead any breach of contract based on a failure to counsel Plaintiff, much less demonstrate a likelihood of success on the merits of such claim.

### E. Plaintiff Was Afforded Due Process During the Chapter Four Investigation.

Due process "is flexible and requires only such procedural protections as the particular situation demands." *Riano v. McDonald*, 833 F.3d 830, 834 (7th Cir. 2016). "The cornerstone of due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner." *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 571 (7th Cir. 2017). Here, Plaintiff pled that he received notice of the investigation, that Dean Rosato Perea issued Charges outlining the allegations, and that he was able to respond through a Rebuttal and Final Statement. (Comp. ¶¶ 48, 64). Dean Rosato Perea and Plaintiff exchanged over 1,200 documents during the internal investigation process, and Plaintiff will once again have the opportunity to be heard through the hearing process. (Handbook § 4.4.4; Dec. of Dean Rosato Perea ¶ 46). Thus, to the extent Plaintiff is alleging that DePaul did not afford him due process, Plaintiff has pled himself out of any such claim and certainly has not demonstrated a likelihood of success on the merits.

Plaintiff also alleges that DePaul breached the Handbook by charging him with misconduct based on Handbook provisions that were not in existence at the time of the alleged conduct. (Comp. ¶ 104(d)). However, the language of the Handbook preamble refutes Plaintiff's position:

> Notwithstanding the foregoing, if any modification to this Handbook affecting the substantive rules or procedures articulated in Chapter 4 is formally approved during a pending dismissal, termination, or disciplinary proceedings of a full-time tenure line or term faculty member, that process will continue using the substantive standard or procedure effective on the date the dismissal, termination or disciplinary proceeding began.

(Comp. Ex. 1). Plaintiff has not pled that any dismissal, termination, or disciplinary proceedings were pending against him on July 1, 2016. Rather, he pleads that on August 31, 2017 – well over a year after the Handbook's effective date – Dean Rosato Perea announced she was opening

27

an investigation. (Comp. ¶ 48). Plaintiff's allegation regarding any retroactive application of "misconduct" is readily refuted by his own pleadings.

Plaintiff's attempt to discredit Dean Rosato Perea's investigation based on the theory that DePaul is barred from investigating his conduct prior to July 1, 2016 is similarly futile. No language in the Handbook prevents DePaul or Dean Rosato Perea from looking to events that occurred prior to July 1, 2016 when determining whether Plaintiff engaged in a "pattern of extreme intimidation and aggression towards other members of the university community." Plaintiff's underlying conduct and the incidents occurring prior to July 1, 2016 can very well illustrate part of a pattern that did not come to full fruition until, and continued after, July 1, 2016. Plaintiff's position that the July 1, 2016 Handbook resets the clock on his behavior and requires DePaul to turn a blind eye to any conduct occurring prior to the issuance of the new Handbook is nonsensical and not supported by the plain language of the Handbook. Thus, even if this claim could survive dismissal, Plaintiff has not demonstrated any likelihood of success on the merits.

### F.    Dean Rosato Perea and Provost denBoer Timely Completed the Chapter Four Investigation.

Chapter Four explicitly states that "[a]ll procedures are to be carried out as expeditiously as is reasonably possible." (Handbook § 4.4.1). Plaintiff has not pled any facts alleging that the Chapter Four procedure was not carried out as expeditiously as reasonably possible, particularly in light of the extension Dean Rosato Perea granted Plaintiff. Dean Rosato Perea approved a month-long extension to January 2, 2018 for Plaintiff to submit his Rebuttal to the Statement of Charges. Dean Rosato Perea explained in writing at the time that her report would be due two weeks thereafter (January 16, 2018), and that Plaintiff's final statement would be due two weeks after the report (January 30, 2018). (Dec. of Dean Rosato Perea ¶ 35). To accept Plaintiff's

"untimeliness" argument, Dean Rosato Perea's decision would have been due on January 25, 2018 – five days before she received Plaintiff's response. Plaintiff's position that Dean Rosato Perea should have submitted her final decision before Plaintiff submitted his final statement would have required Dean Rosato Perea to violate the seven-step process set forth in the Handbook. (Handbook § 4.4.3). Instead, Dean Rosato Perea issued her decision in the sequence required by the Handbook and "as expeditiously as is reasonably possible," in light of the substantial extension provided to Plaintiff. Plaintiff has not demonstrated any likelihood that he would succeed on this claim should it survive dismissal.

### G. DePaul Followed the Faculty Handbook Procedure in Selecting the Hearing Committee Members.

As a preliminary matter, Plaintiff's allegation regarding the creation of the hearing committee is barred as Plaintiff did not plead any breach of contract based on the hearing committee selection process in his Complaint. Indeed, the hearing committee was selected on May 1, 2018 – over two months after Plaintiff filed his Complaint. Thus, Plaintiff has no likelihood of success on the merits of this claim as it is not pending before the Court. Even if this allegation were included in Plaintiff's Complaint, however, Plaintiff nevertheless cannot demonstrate a likelihood of success on the merits. Section 4.4.2 of the Faculty Handbook grants Faculty Council the right to identify a panel of nine tenured faculty members for selection to serve on a Chapter Four faculty hearing committee. As Plaintiff notes, the Committee on Committees is a subcommittee of and, thus, part of, the Faculty Council. (Dkt. No. 38, p. 17). The Handbook does not specify which committee or subcommittee of the Faculty Council may choose the panel and, more significantly, does not preclude the Committee on Committees from choosing the panel. Plaintiff has not identified, and cannot identify, any provision allegedly breached during the selection of the hearing committee.

**IV.  The Equitable Balance Weighs in Favor of This Court Denying Injunctive Relief.**

Even assuming *arguendo* that Plaintiff proved irreparable harm and a likelihood of success on the merits, the equitable balance weighs against injunctive relief.  In the balancing phase, the plaintiff "must demonstrate that the harm [he] will suffer without an injunction outweighs any harm that may be suffered by [the defendant] if the injunction is granted." *Ditton*, 2014 U.S. Dist. LEXIS 125677, *32 (citing *Girl Scouts*, 549 F.3d at 1085-86).  In conducting this analysis, the Court uses a sliding scale approach:  "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor, the less likely he is to win, the more need it weigh in his favor." *Girl Scouts*, 549 F.3d at 1086; *Simonsen*, 2001 U.S. Dist. LEXIS 16993, *12-13.

In this case, halting the Chapter Four investigation would open the door for disgruntled or disheartened employees to use preliminary motions as a tool for arbitrarily stopping or resetting internal investigations.  DePaul initiated a Chapter Four investigation into Plaintiff's conduct after receiving numerous complaints that Plaintiff engaged in bullying, harassing, and intimidating conduct.  The COL and Plaintiff's victims – who also have rights protected by the Faculty Handbook – would be harmed if the process were delayed.

Plaintiff's vague allegations regarding a chilling effect and academic freedom also do not move the scale in Plaintiff's favor. A right to academic freedom does not afford Plaintiff immunity from disciplinary action.  Federal courts have recognized this clear limit to the scope of academic freedom, explaining, "we do not conceive academic freedom to be a license for uncontrolled expression . . . internally destructive to the proper functioning of the institution." *Clark v. Holmes*, 474 F.2d 928, 931 (7th Cir. 1973); *see also, e.g.*, *Keen v. Penson*, 970 F.2d 252, 258 (7th Cir. 1992) (recognizing institution's interest in ensuring its students were "not subject to demeaning, insulting, and inappropriate comments" and upholding disciplinary action for

unprofessional behavior); *Maples v. Martin*, 858 F.2d 1546, 1554 (11th Cir. 1988) ("Comments that occur in the context of a longstanding dispute over internal policies have been held to justify drastic administrative action.").

## CONCLUSION

Plaintiff's attempt to stop the internal process before the third (faculty hearing *de novo* review) and fourth (appeals process) levels of review is an attempt to distract from Plaintiff's insufficient claims. Dean Rosato Perea received multiple complaints from various faculty members regarding Plaintiff's destructive conduct, and she was not alone. ███████████

████████████████████████████████████████████████████████████

███████ DePaul's process for addressing these complaints and preventing further harm to the COL and its faculty members provides multiple protections for tenured faculty subject to potential discipline, many of which Plaintiff has utilized and can continue to utilize. However, the process is not complete – in large part because Plaintiff has moved heaven and earth to delay, derail, and discredit a duly-authorized process specifically designed to protect faculty members from termination without due process and cause.

After the process is complete, Plaintiff may or may not have cognizable and ripe claims for which he can seek redress through the ordinary course of litigation. Now, he does not. Plaintiff's Motion is a transparent attempt by Plaintiff to avoid a hearing before his peers and escape accountability for his conduct. DePaul has obligations to protect complaining faculty from bullying behavior and to give Plaintiff a fair hearing on his conduct. It is seeking to meet these obligations through the Chapter Four process. There are high standards for issuing injunctive relief – Plaintiff must meet all of them, and he has not met any. Accordingly, DePaul University, Jennifer Rosato Perea, and Dennis H. Holtschneider request this Court deny Plaintiff

Terry Smith's Motion for Preliminary Injunction, and grant any other relief this Court deems just and proper.

Dated:  August 24, 2018

Respectfully submitted,

DePaul University, Jennifer Rosato Perea and Dennis H. Holtschneider

By:    /s/ Eric H. Rumbaugh
       One of Their Attorneys

Eric H. Rumbaugh
Michael Best & Friedrich LLP
100 E. Wisconsin Ave., Suite 3300
Milwaukee, WI 53202
Phone: 414.225.2742

Denise Greathouse
Katherine L. Goyert
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, Illinois  60606
Phone: (312) 222-0800

### CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2018, I electronically filed the foregoing ***Defendants' Response In Opposition To Plaintiff's Motion For Preliminary Injunction*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Fitzgerald Timothy Bramwell
The Law Offices of Fitzgerald Bramwell
225 W. Washington, Suite 2200
Chicago, IL 60606
Email: bramwell@fitzgeraldbramwell.com

/s/ Eric H. Rumbaugh
Attorney for Defendants,
DePaul University, Jennifer Rosato Perea
and Dennis H. Holtschneider
Michael Best & Friedrich LLP
100 E. Wisconsin Ave., Suite 3300
Milwaukee, WI 53202
Phone: 414.225.2742
Email: ehrumbaugh@michaelbest.com